IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 19-30-RGA |
| BRIAN FLAGG., | : | |
| Defendant. | : | |

MEMORANDUM ORDER

Defendant filed a motion for compassionate release. (D.I. 24). The Government responded. (D.I. 27). The Government concedes that Defendant exhausted his administrative remedies and that there were "extraordinary and compelling reasons" warranting a sentence reduction, but it argues that he should not be released because he poses a significant danger to the community. (*Id.* at 7-9). I subsequently entered an order postponing decision pending Defendant's completion of the RDAP program, which I thought would be in early December 2020. (D.I. 31). Unfortunately, FCI Schuykill suffered from a COVID-19 outbreak, resulting in "lockdown," meaning that through no fault of Defendant, he has not yet completed the RDAP program. He is stuck on 90% completion.

I have since received numerous submissions, mostly from Defendant. (D.I. 32, 33, 35, 36, 37, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48). Per the Government's last submission, on January 11, 2021, the "RDAP program is currently suspended due to a COVID lockdown." (D.I. 48). At the time, approximately six percent of the inmates were positive. The Bureau of Prison's website reported on January 27, 2021, that there were seven positive inmates, fourteen positive staff, and 244 recovered inmates.

The Government reported that Defendant had done 452.25 of the 500 hours as of December 11, 2020, before the lockdown. (D.I. 42). I think Defendant agrees that this is substantially accurate. (D.I. 45 at 2). Defendant points out that, but for the lockdown, he was scheduled to graduate from the program on January 8, 2021. (*Id.*).

I note Defendant's projected release date continues to be April 28, 2022. (D.I. 30; Bureau of Prisons Inmate Locator for Brian M. Flagg (last visited January 27, 2021)). My understanding is that but for his recent (2012) firearms conviction, successful completion of the RDAP program would result in his sentence being shortened by a year.[1]

In essence, before I can grant the motion of a prisoner for compassionate release, the prisoner has (1) to exhaust administrative remedies, *see United States v. Raia*, 954 F.3d 594 (3d Cir. 2020), (2) to show extraordinary and compelling circumstances, (3) to show an absence of dangerousness, and (4) to show that the section 3553(a) factors support a reduced sentence. It appears that I should consider these sequentially. *See, e.g., United States v. Washington*, 2020 WL 1969301 (W.D.N.Y. April 24, 2020). The first two factors have already been determined to be met. (D.I. 31).

I now consider whether Defendant has shown an absence of dangerousness. His most recent conviction was for possession with intent to distribute 21 grams of crack cocaine. (D.I. 19 (hereinafter, "PSR")). He was on supervised release at the time, for being a felon in possession of a firearm. (PSR, ¶¶ 87-91). The felon in possession conviction was for an arrest in late 2011 in which he was found alone in a vehicle, probably under the influence of crack cocaine, with a 9 mm automatic on the floor of the car. (*Id.*). He also has a conviction for unlawful imprisonment

---

[1] There seems to be a ten-year limit on the impact of prior convictions. His 1999 robbery 2nd conviction does not count. It appears that the 2008 robbery 2nd conviction is more than ten years from the date of sentence in this case, and thus also does not count. (D.I. 37, Attachment A).

in 2010, involving domestic violence. (*Id.*, ¶¶ 83-84). In 2007, he had a robbery 2nd conviction where he and a codefendant (who used a gun) took Percocet and Xanax from the victim. (¶¶ 74-76). He had a 1999 robbery 2nd conviction that was more characteristic of shoplifting than robbery. (¶¶ 57-59). He also has a dozen shoplifting and/or retail theft, three possession of drugs and three criminal impersonation convictions between 1996 and 2010, which are typical "drug addict" offenses. It is sad, but therefore not surprising, that Defendant reported that "he used heroin daily from the ages of 18 to 25. . . . [A]fter he ceased his heroin use, he increased his abuse of crack cocaine." (PSR, ¶ 140).

A significant factor in any consideration of Defendant's argument (and the Government's opposition) is Defendant's history of committing crimes in connection with his history of drug use and abuse. Absent breaking the cycle of drug use, he cannot show that he is not a danger to the community. I have been optimistic that his participation in the RDAP program would help. From what I have heard, it is a very good program.[2] While I was originally concerned that

---

[2] "Inmates are strongly encouraged to participate in the treatment, ranging from a 40-hour drug education program to a 500-hour Residential Drug Abuse Program (RDAP), which is proven highly effective in reducing recidivism (participants are 16 percent less likely to recidivate than comparable inmates who are not treated) and relapse (participants are 15 percent less like[ly] to relapse compared to non-participating inmates). RDAP includes 'after-care' provided in the residential reentry center as inmates transition back [to] the community and face opportunities for relapse not found in the prison environment. Non-violent inmates who complete the program earn a reduction in their sentence of up to 12 months." https://www.justice.gov/archives/reentry/file/844616/download (retrieved January 28, 2021). The statistics come from a 2000 study called the TRIAD study. "The probability of arrest or revocation for men released to supervision who entered and completed treatment was 44.3 percent as compared to a probability of approximately 52.5 percent for untreated subjects. Thus, men who received and completed in-prison treatment were 16 percent less likely to recidivate. . . . Among male inmates who completed residential drug abuse treatment, 49.9 percent were likely to use drugs within 3 years after release compared to 58.5 percent among untreated inmates. Male inmates who entered and completed in-prison residential drug abuse treatment were 15 percent less likely to use drugs 3 years following release than those who did not receive treatment." https://www.bop.gov/resources/TRIAD.jsp (page 155)(retrieved January 28, 2021).

Defendant complete the program, it is only recently that I have seen that the program includes transitional "after-care" in a residential reentry center.

Defendant has spent most of the time since his firearms conviction in custody. Thus, the absence of a recent conviction involving, or hinting at, any sort of violence cannot be accorded any significant weight.

I read a letter submitted by his daughter. (D.I. 35). It is an insightful letter, and it is strong support for the proposition that Defendant is facing his issues. I have read other letters that similarly show positive signs for the future. (D.I. 36-2). While I am impressed with the letters submitted on behalf of Defendant, and indeed have been impressed with the letters submitted by Defendant on his own behalf, I cannot in good conscience say that Defendant would not be a danger to community if released. The RDAP program's effectiveness is proven, but it is not so effective, even considering my positive evaluation of Defendant as an individual, that I think he has shown that he is not a danger to the community if released.[3] I am also concerned that releasing him without after-care at a residential reentry center (i.e., not following the recommended treatment) adds to the risk.

Thus, I do not need to consider the fourth step in the sequential analysis. I said in the earlier order, "I do not think I could say that Defendant is not a danger to the community sufficient that I could release him now, but I might reach a different conclusion after [his expected completion of the RDAP program]." (D.I. 31). Regretfully (as I would rather not continue to expose Defendant to the genuine health risk he faces), I DENY the motion for compassionate release. (D.I. 24).

IT IS SO ORDERED this 28th day of January 2021.

---

[3] Defendant has had numerous opportunities for drug treatment. (PSR, ¶¶ 142-49). The only previous time treatment was successful, "he did not successfully complete the aftercare programs." (*Id.*, ¶ 142).

<u>/s/ Richard G. Andrews</u><br>
United States District Judge